UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER A. WRIGHT,

    Petitioner,                                   Case No. 04-CV-72597
                                                      HONORABLE AVERN COHN

v.

BLAINE LAFLER,

    Respondent.
_____/

## OPINION AND ORDER CONDITIONALLY GRANTING
## PETITION FOR WRIT OF HABEAS CORPUS

### I. Introduction

This is a habeas case under 28 U.S.C. § 2254. Petitioner Christopher A. Wright, (Petitioner), is a state inmate who, after pleading guilty, is serving a sentence of seven to fifteen years for one count of operating under the influence liquor (O.U.I.L.) causing death, Mich. Comp. Laws § 257.625(4); two to five years for two counts of O.U.I.L. causing injury, Mich. Comp. Laws § 257.625(5); and one to four years for two counts of second-degree child abuse, Mich. Comp. Laws § 750.146. Petitioner filed a *pro se* petition for writ of habeas corpus claiming that he is incarcerated in violation of his constitutional rights specifically related to the circumstances of his guilty plea. Respondent, through the Attorney General's Office, filed a response, arguing that petitioner's claims lack merit.

The Court subsequently appointed counsel to represent petitioner. An evidentiary hearing was conducted on July 15, 2005. Following the hearing, the parties

filed supplemental papers. The matter is now ready for decision. For the reasons which follow, the petition will be conditionally granted.

## II.  Procedural History

Petitioner plead guilty to the above charges in the Oakland County Circuit Court on June 13, 2000. Petitioner filed a delayed appealed, arguing, *inter alia*, that his plea was involuntary. The Michigan Court of Appeals affirmed in an unpublished opinion. *People v. Wright,* 238089 (Mich.Ct.App. April 15, 2003). The Michigan Supreme Court denied leave to appeal. *People v. Wright,* 469 Mich. 880 (2003).

Petitioner then filed an application for writ of habeas corpus, in which he seeks relief on the following grounds:

> I. Petitioner's plea was unknowing and involuntary, in violation of due process of law, entitling petitioner to the issuance of a writ of habeas corpus, where petitioner's plea was improperly induced by representations made by the prosecutor that the guidelines sentence range petitioner would be exposed to at sentencing was no greater than 29 to 57 months, but where petitioner was ultimately sentenced to a term of 84 months from the top of the 43 to 86 month guidelines range.
>
> II. Petitioner's plea was unknowing and involuntary, in violation of due process of law, entitling petitioner to the issuance of a writ of habeas corpus, where petitioner's plea was coerced by imperious remarks made by the trial court regarding a harsher sentence that she could impose if petitioner did not accept her plea offer but was later convicted at trial.
>
> III. Petitioner's plea was unknowing and involuntary and the product of ineffective assistance of counsel, entitling petitioner to the issuance of a writ of habeas corpus, where it was entered in reliance upon the erroneous advice of his attorney that he would be eligible for parole after serving only a portion of any sentence the trial court imposed upon him as a result of receiving time off his sentence for good behavior as well as early release by the Michigan Parole Board due to prison overcrowding, but where petitioner was not eligible to receive time off for good behavior or early release by the parole board, instead to serve his entire minimum sentence before becoming eligible for parole.

## III.  Facts

2

The material facts as gleaned from the record follow.

### A.

Petitioner's convictions arise from a traffic accident which occured in Southfield, Michigan on September 24, 1999. One of petitioner's daughters was killed in the accident and his other daughter and the driver of another car were injured. Police at the traffic scene smelled a heavy odor of alcohol coming from petitioner and his speech was slurred. An empty beer bottle was recovered from the floor of the car. Petitioner admitted to the police he had been drinking. Petitioner was arrested and police obtained a search warrant to draw petitioner's blood. The Michigan State Police laboratory analysis indicated that petitioner's blood alcohol content was .13, over the legal limit for Michigan. Petitioner was charged with O.U.I.L. causing death, O.U.I.L. causing injury, and child abuse.

### B.

Petitioner then had several pre-trial hearings and conferences regarding his possible sentence. The first mention in the record of petitioner's guidelines sentence appears at an a April 5, 2000 hearing on a motion to adjourn the trial, where the prosecutor expressed his assessment of the applicable sentencing guidelines as being 29 to 57 months as follows:

THE COURT: What are the guidelines?

MR. COVAULT [the prosecutor]: I score them at 29 to 57 months, judge.

At that point, petitioner's trial counsel indicated that he had discussed the guidelines with the prosecutor and "we think they're considerably less than that."
(Motion for Adjournment of Trial, Apr. 5, 2000, Tr. at p. 6).

On May 31, 2000, petitioner filed a petition for a *People v. Cobb* plea proposal. Under *People v. Cobbs,* 443 Mich. 276 (1993), a criminal defendant can ask the trial court for a preliminary evaluation about the likely sentence if the defendant were to plead guilty. Petitioner's counsel indicated in the petition that he had scored petitioner's sentencing guidelines range under the Michigan Sentencing Guidelines at 19-38 months and acknowledged in a footnote that the prosecutor had scored the guidelines range at a higher level, stating that the prosecutor's calculations "come to a minimum sentence of twenty-nine months." Counsel also argued that there were a number of mitigating factors on petitioner's behalf that would justify the trial court departing below the sentencing guidelines range, as calculated by counsel, and asked the trial court to enter into a plea agreement with petitioner pursuant to *Cobbs,* whereby petitioner would receive ten months in the Oakland County Jail in exchange for pleading guilty.

Petitioner's plea proposal was discussed at a pre-trial conference on June 6, 2000 where the following exchange took place between the trial court and defense counsel:

> THE COURT: What is it? What are the guidelines? 29 to 60, 24 to 43.
>
> MR. RYAN [defense counsel]: We come out to 19-38 [months] and he [the prosecutor] comes out to 29.

(Pre-Trial Conference June 6, 2000, Tr. at p. 4).

Petitioner's counsel asked the trial court to consider entering into a *Cobbs* plea, whereby petitioner would receive ten months in the county jail in exchange for his plea. (*Id.* at p. 6). The trial court responded: "That's not even in the guidelines." (*Id.*). The trial court then made the following remarks:

> THE COURT: All I can say at this point–

4

MR. COVAULT [the prosecutor]: I know, I understand (undeterminable)--

THE COURT: –would be guidelines.

MR. COVAULT: –circumstances.

THE COURT: All I could do right now is guidelines.

MR. RYAN: Your Honor,--

THE COURT That's all I could do right now is guidelines and see–

MR. RYAN: –but we don't–we disagree on what the guidelines are. I mean–

THE COURT: I don't know what they're going–

MR. RYAN: –my calculations–

THE COURT: –to come back.

MR. RYAN –don't come out to–

THE COURT: But I would say that I would agree to go within the guidelines. I think there would be plenty for me to go outside of the guidelines.

MR. RYAN: –meaning what?

THE COURT: That if–I mean I think that I would have enough that I would not be held within the guidelines in this case. But I'm agreeing to go within the guidelines as a Cobbs [plea] and we can argue about what the points are and the variables when the guidelines come back. All I can say right now is, is that I will sentence him within the guidelines.

MR. RYAN: And that would be based upon what the probation department comes back and their–

THE COURT: Yes.

MR. RYAN: – computation?

THE COURT: Yes.

(*Id.* at pp. 7-8).

The trial court again indicated that she would not agree to a sentence of ten

5

months because it was not within the guidelines. Counsel argued that there were substantial and compelling reasons to deviate from the sentencing guidelines. The trial court responded that counsel would have to say something "unbelievable" for her to depart below the sentencing guidelines range, but she was not inclined to do anything but stay within the guidelines. The matter was adjourned to give petitioner time to discuss the matter with counsel. (*Id.* At pp. 8-10). The trial court again indicated that the Cobb's plea "is guidelines.". (*Id.* at p. 10).

On June 13, 2000, petitioner plead guilty to the above charges. At the plea hearing, petitioner's counsel made the following remarks:

> MR. RYAN: Your Honor, we are going to enter a Cobbs plea based upon the guidelines as the–it will be based on that as the determining factor. The–I just remind the Court we in a conference last month–
>
> THE COURT: Yes.
>
> MR. RYAN: –the Court indicated–
>
> THE COURT: Yeah.

(Plea June 13, 2000, Tr. at p. 3).

When taking petitioner's plea, the trial court stated the following regarding his possible sentence and the guidelines:

> THE COURT: Pursuant to People versus Cobbs the only thing that I have agreed about your sentence is it will be within the sentencing guidelines. Is that your understanding?
>
> THE DEFENDANT: Yes.

(*Id.* at p. 5).

The trial court did not, however, indicate a specific sentencing guidelines range, nor clearly indicate that she would agree to sentence petitioner within the sentencing

guidelines range *as scored by the probation department*. After being advised of his constitutional rights, petitioner pleaded guilty.

Prior to sentencing, the probation department scored petitioner's sentencing guidelines range at 43 to 86 months. At petitioner's sentencing on October 3, 2000, the prosecutor, who had at least twice expressed on the record that petitioner's guidelines were 29 to 57 months, now argued for petitioner to be sentenced to the high end of the sentencing guidelines range as calculated by the probation department. The trial court agreed with the guidelines as determined by the probation department and sentenced petitioner to seven to fifteen years (84 to 180 months) on the O.U.I.L. causing death conviction.

Following sentencing, petitioner moved to withdraw his guilty plea on the grounds that it was involuntary based in part on the prior statements on the record by the prosecutor that the sentencing range would be no greater than 29 to 57 months. The trial court, following a hearing on November 7, 2001, denied the motion, finding that petitioner had been clearly informed of the ramifications of his pleading guilty, including that his sentence would be determined by the probation department.

Petitioner then filed appeals with the Michigan Court of Appeals and Supreme Court which, as noted above, were denied.

### IV.  Analysis

### A.  Standard of Review

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)   resulted in a decision that was contrary to, or involved an

> unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d); *Harpster v. State of Ohio*, 128 F. 3d 322, 326 (6th Cir. 1997).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. An "unreasonable application" occurs when the state court identifies the correct legal principle from a Supreme Court's decision but unreasonably applies that principle to the facts of the prisoner's case. *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000). A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

### B. The Claims

#### 1. Petitioner's first claim

Petitioner first contends that his guilty plea was involuntary because he was lead to believe by remarks made by the prosecutor at prior pre-trial hearings that his minimum sentence would be no greater than a minimum sentence within the sentencing guidelines range of 29 to 57 months.[1] In his second claim, petitioner

---

[1] Under Michigan law, only the minimum sentence must presumptively be set within the appropriate sentencing guidelines range. *See People v. Babcock,* 469 Mich. 247, 255, n. 7 (2003)(citing M.C.L.A. 769.34(2)). The maximum sentence is not determined by the trial judge but is set by law. See *People v. Claypool,* 470 Mich. 715, 730, n. 14 (2004)(citing M.C.L.A. 769.8). Only the minimum sentence for a defendant is

8

contends that he was coerced into pleading guilty by remarks made by the trial court that she could exceed the sentencing guidelines range. In his third claim, petitioner claims that he pleaded guilty based upon erroneous advice from his counsel concerning his parole eligibility.

On direct appeal, the Michigan Court of Appeals rejected the claim that petitioner's plea was involuntary, stating:

> There is no showing that defendant's plea was involuntary. Defendant pleaded guilty based on the representation that his sentence would be within the guidelines. No specific range had been calculated, and defendant was aware that the guidelines scoring was in dispute. The court's comment that defendant could be sentenced in excess of the guidelines was a response to defendant's argument that he could be sentenced beneath the guidelines range, and it was not a coercive attempt to secure a guilty plea.

*People v. Wright*, slip op. at p. 1.

**a.**

A plea of guilty must be knowingly and voluntarily made. The defendant must be aware of the "relevant circumstances and likely consequences" of his plea. *Hart v. Marion Correctional Institution*, 927 F. 2d 256, 257 (6th Cir. 1991). The defendant must also be aware of the maximum sentence that can be imposed for the crime for which he or she is pleading guilty. *King v. Dutton*, 17 F. 3d 151, 154 (6th Cir. 1994). When a petitioner brings a federal habeas petition challenging his plea of guilty, the state generally satisfies its burden by producing a transcript of the state court proceedings showing that the plea was made voluntarily. *Garcia v. Johnson*, 991 F. 2d 324, 326 (6th Cir. 1993). The factual findings of a state court that the guilty plea was properly made are generally accorded a presumption of correctness. Petitioner must overcome a

---

based on the applicable sentencing guidelines ranges. *Id.*

9

heavy burden if the federal court is to overturn these findings by the state court. *Id.*

It is only when the consensual character of a guilty plea is called into question that the validity of a guilty plea may be impaired. *Mabry v. Johnson*, 467 U.S. 504, 508-09 (1984). A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his or her own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (i.e. bribes). *Mabry v. Johnson*, 467 U.S. at 509 ( quoting *Brady v. United States*, 397 U.S. 742, 755 (1970)). An unfulfilled state promise obtained in return for a guilty plea will entitle a habeas petitioner to habeas relief. *Myers v. Straub,* 159 F. Supp. 2d 621, 627 (E.D. Mich. 2001).

### b.

### 1)

Petitioner contends that his guilty plea was invalid because he was lead to believe by the several comments by the trial court and the prosecutor at both the pre-trial hearings and at the guilty plea that the trial court had agreed to sentence him, at the most, to a minimum sentence within the sentencing guidelines range of 29 to 57 months that had been scored by the prosecutor on two prior occasions.

In response, respondent argues that petitioner was clearly informed by the trial court that the only thing that she would agree to would be a sentence within the sentencing guidelines range as scored by the probation department.

Respondent's argument rings hollow. As can be seen from the transcripts excerpts above, the trial court's only reference to the guidelines range as being scored by the probation department was at the pre-trial hearing on June 6, 2000 where petitioner's counsel requested a *Cobbs* plea. At the actual plea hearing on June 13, 2000, set forth above, the trial court indicated that pursuant to *Cobbs,* the only thing that she agreed to was that petitioner would be sentenced within the sentencing guidelines. The trial court, did not, however, indicate a specific sentencing guidelines range, nor indicate that she would agree to sentence petitioner within the sentencing guidelines range as scored by the probation department. The trial court also did not explain to petitioner that the sentencing guidelines range would cover only his minimum sentence, not the maximum sentence. See n. 2, *supra*.

### 2)

Significant plea-agreement terms should be stated explicitly and unambiguously to preclude their subsequent circumvention by either party. *See United States v. Burns,* 160 F. 3d 82, 83 (1st Cir. 1998). Ambiguities in a plea agreement must be construed against the government. *See United States v. Fitch,* 282 F.3d 364, 367-68 (6th Cir. 2002). This is particularly appropriate where the government could have taken steps to avoid any imprecisions in the plea agreement. *Id.* This rule has been applied in the context of habeas cases. *See Spencer v. Superintendent, Great Meadow Correctional Facility,* 219 F. 3d 162, 167 (2d Cir. 2000). Moreover, any promise made by a judge in the course of a guilty plea colloquy operates as a promise made by the state in exchange for a defendant's waiver of rights and guilty plea. *Id.* at 168. Objective standards, or a defendant's reasonable beliefs, govern whether an additional

promise made during a plea colloquy becomes part of the plea contract. *See Brown v. Poole,* 337 F. 3d 1155, 1159 (9th Cir. 2003). "[F]ocusing on the defendant's reasonable understanding also reflects the proper constitutional focus on what induced the *defendant* to plead guilty." *Id.* at p. 1159-60 (emphasis original). Further, "[A] plea agreement is not an appropriate context for the State to resort to a 'rigidly literal approach in the construction of language..'" *See Berceny v. Johnson,* 481 F. Supp. 1165, 1169 (E.D. Mich. 1979); *rev'd on other grds,* 633 F. 3d 433 (6th Cir. 1980)(internal quotation omitted). Finally, even an inadvertent breach of a plea agreement can violate a defendant's constitutional rights. *See Santobello v. New York,* 404 U.S. 257, 262 (1971).

**3)**

Here, the trial court did not *explicitly* and *unambiguously* explain the terms of the *Cobbs* agreement to petitioner when accepting his plea. She did not advise petitioner at his guilty plea that the guideline range which she would be willing to sentence petitioner within would be the range determined by the probation department as part of its pre-sentence investigation, and not the guidelines ranges as previously discussed at the two pre-trial hearings by the prosecutor and defense counsel. The terms of the sentencing agreement as reflected in the record were clearly ambiguous and the trial court had an obligation to take steps to clear up any imprecisions in the agreement.

Moreover, it is unclear that the trial court's statement at the June 6, 2000 pre-trial hearing that she would only stay within the sentencing guidelines was itself clear and unambiguous. It was petitioner's counsel who actually mentioned that the sentencing guidelines would be "based upon what the probation department comes

back" and their "computation," to which the trial court responded in the affirmative. These comments were made during a discussion regarding whether the applicable sentencing guidelines range was 19-38 months, as scored by defense counsel, or 29-57 months, as scored by the prosecutor. After rejecting defense counsel's request for a sentence which departed below the sentencing guidelines range, the trial court indicated that she would be willing to sentence petitioner within the guidelines if he were to plead guilty, noting that both sides could argue what the points and the variables were for the sentencing guidelines when "the guidelines come back." Moreover, these comments were not made at petitioner's plea hearing, but rather at a pre-trial conference before petitioner plead guilty.

      Petitioner testified at the evidentiary hearing that he construed the trial court's comments at the conference to mean that after the pre-sentence report came back, the two sides could argue over which of the two sentencing guidelines ranges which had previously been computed was applicable. This was a reasonable assumption based on an careful examination of the record. The only discussion of petitioner's sentencing guidelines were the two ranges proposed by the prosecutor and petitioner's counsel. It was not reasonable for petitioner to think that the trial court's comments indicated that the probation department could come back with a higher sentencing guidelines scoring range, nor did the trial court explain that this was a possibility. Petitioner also testified that after the plea hearing, his trial counsel filed a sentencing memorandum, in which he indicated that petitioner had pleaded guilty in reliance upon the prosecutor's representations at the April 5, 2000 hearing that petitioner's sentencing guidelines were, at the most, 29-57 months. Petitioner's trial counsel's testimony at the

evidentiary hearing confirmed he had filed such a memorandum.

In light of the foregoing, the Court concludes that petitioner's guilty plea was not entered into knowingly or voluntarily. Petitioner clearly pleaded guilty in the belief that his minimum sentence would be no greater than fifty seven months. This belief was reasonable in light of the numerous discussions between the parties concerning the two guidelines ranges that had been scored. The trial court had the opportunity to intercede at any point and clarify that the applicable sentencing guidelines range would ultimately be determined by the probation department and had the potential of being higher than either of the sentencing guidelines ranges discussed by the parties, but did not. *See Brown v. Poole,* 337 F. 3d at 1161. In fact, the trial court did not advise petitioner, prior to accepting his guilty plea on June 13, 2000, that petitioner would be sentenced within a specific guidelines range or even that she would agree to sentence him to the sentence guidelines range as determined by the probation department. In light of the ambiguities in the sentence agreement entered into between the prosecutor and petitioner, and the trial court's failure to adequately and fully explain the consequences of pleading guilty, petitioner's plea was not made knowingly and voluntarily. The Michigan Court of Appeals' contrary conclusion was in error; the court of appeals failed to fully explore the exchanges between petitioner, counsel, and the trial court regarding the terms of petitioner's *Cobbs* plea and his possible guideline sentence which show that the plea was not knowingly made. Petitioner is therefore entitled to a writ of habeas corpus on this claim.

### 2.  Petitioner's Second and Third Claims

In light of the fact that the court is granting habeas relief on petitioner's first

claim, the Court will briefly address petitioner's second and third claims.  In his second claim, petitioner contends that he was coerced into pleading guilty by the trial court's implicit threats to exceed the sentencing guidelines range if petitioner did not plead guilty.

Although Fed. R. Crim. P. 11(e)(1) prohibits judicial participation in plea negotiations, it is not a federal constitutional rule; therefore, the prohibition on judicial participation in plea bargaining in the federal courts does not necessarily invalidate every instance of judicial participation in the negotiation of a guilty plea in a state court. *Alvarez v. Straub,* 21 Fed. Appx. 281, 283 (6th Cir. 2001)(*quoting Frank v. Blackburn,* 646 F. 2d 873, 880 (5th Cir. 1980)).  Here, the evidence in the record indicates that the trial court judge's remarks, on their face and in light of the surrounding environment in which they occurred, were not inherently coercive or prejudicial to petitioner's rights, because the judge's comments merely appeared to be an attempt to inform petitioner of the possible consequences of proceeding with a full trial. *See Caudill v. Jago,* 747 F. 2d 1046, 1050-51 (6th Cir. 1984).  There is no evidence which demonstrates that the trial court judge's remarks "were stern, overbearing or determined to intimidate" petitioner into pleading guilty. *Id.*  Rather, the remarks appeared to be an explanation by the trial court as to why she would not consider departing below the sentencing guidelines range as petitioner's counsel had requested.  Even under  Fed. R. Crim. P. 11(e)(1), it is permissible for a federal court judge to reject a plea agreement and express his reasons for doing so. *See United States v. Miles,* 10 F. 3d 1135, 1139 (5th Cir. 1993).  Accordingly, petitioner's second claim is without merit.

Petitioner's third claims is that his guilty plea was involuntary because his

attorney gave him incorrect advice about his parole eligibility. At the evidentiary hearing, both petitioner and his ex-girlfriend testified that his trial counsel had advised them that petitioner would not have to serve his entire minimum sentence, because he would be eligible for early release due to good time credits and prison overcrowding. Petitioner's trial counsel, on the other hand, testified that he advised petitioner that he would have to serve his entire minimum prison sentence.

The problem that petitioner has with this claim is establishing that he was prejudiced by counsel's advice. In order to satisfy the prejudice requirement for an ineffective assistance of counsel claim in the context of a guilty plea, the defendant must show that there is a reasonable probability that, but for counsel's errors, he or she would not have pleaded guilty but would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). An assessment of whether a defendant would have gone to trial but for counsel's errors "will depend largely on whether the affirmative defense likely would have succeeded at trial." *Hill,* 474 U.S. at 59; See also *Garrison v. Elo,* 156 F. Supp. 2d 815, 829 (E.D. Mich. 2001). "If examination of the totality of the circumstances shows that the petitioner would in all likelihood have been convicted of the same, or greater, charges after a trial, he cannot show that the advice to plead guilty prejudiced him." *Holtgreive v. Curtis,* 174 F. Supp. 2d 572, 587 (E.D. Mich. 2001).

Here, petitioner has failed to show a reasonable probability that he could have prevailed had he insisted on going to trial, or that he would have received a lesser sentence than he did by pleading guilty. See *Thirkield v. Pitcher,* 199 F. Supp. 2d 637, 655 (E.D. Mich. 2002). The facts of the case, as gleaned from the record indicate that

the police smelled a heavy odor of alcohol coming from petitioner and his speech was slurred.  An empty beer bottle was recovered from the floor of the car.  Petitioner admitted to the police he had been drinking.  At the hospital, blood was taken from petitioner and it revealed a blood alcohol content of .19. [2]  A second blood alcohol test taken two hours later by the police pursuant to a search warrant indicated that petitioner's blood alcohol content was .13, above the .10 legal limit for blood alcohol content at the time of petitioner's offense.  In light of the evidence in this case, it does not appear that petitioner could establish that he was prejudiced by counsel's misadvice.

## V.  Conclusion

For the reasons stated above, the petition for writ of habeas corpus is **CONDITIONALLY GRANTED** with respect to petitioner's first claim.  The State of Michigan must either allow petitioner to withdraw his guilty plea and afford petitioner a new trial within one hundred and twenty (120) days from the date of this order or petitioner may apply for a writ ordering respondent to release him from custody.

**SO ORDERED**.


Dated:  October 11, 2005            s/Avern Cohn_____
                                    AVERN COHN
                                    UNITED STATES DISTRICT JUDGE

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, October 11, 2005, by electronic and/or ordinary mail.

                                    s/Julie Owens_____
                                    Case Manager, (313) 234-5160

---

[2]  These tests would have been admissible pursuant to M.C.L.A. 257.625a(6)(e).

17